HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL MEYERS, an individual,

                Plaintiff,

      v.

DCT TECHNOLOGIES, INC., a Wisconsin
Corporation; MOTIONTEK, LLC, a
Wisconsin limited liability corporation; and
DAVID C. TROUP, an individual,

               Defendants.

No. 11-cv-05595 RBL

ORDER DENYING MOTION TO
DISMISS OR TRANSFER
[Dkt. 15]

## I.    Introduction

This matter is before the Court on Defendants' Motion to Dismiss.  Dkt. 15.  This is a

diversity case brought by Mr. Meyers, a Washington resident, alleging breach of conduct,

misrepresentation, and unjust enrichment against Mr. Troup, a Wisconsin resident, and two

entities formed under Wisconsin law.

Defendants claim this Court does not have personal jurisdiction over them as their

contacts with Washington are minimal.  Defendants assert in the alternative that venue is

improper as the companies' product was developed and produced in Wisconsin, and all official

company paperwork is in Wisconsin where Mr. Troup also resides.

1    Mr. Meyers contends that this Court has personal jurisdiction and venue is proper as he

2 resided in Washington when defendants solicited and negotiated an employment agreement with

3 him.  He conducted business within Washington on defendants' behalf, and he suffered harm

4 here as a result of defendants' conduct.

5                                    **II.    Facts**

6    Defendant Troup is a Wisconsin resident, DCT is a Wisconsin corporation with its

7 principle place of business in Wisconsin, and MotionTek is a dissolved Wisconsin limited

8 liability company.  Dkt. 16 2-3.  Mr. Troup has never resided, owned property, nor maintained a

9 bank account in Washington.  *Id.* at 2.  Neither DCT nor MotionTek has facilities, operations, or

10 offices in Washington; they were never authorized to do business in Washington and never had a

11 registered agent for service of process here.  *Id.*  Neither has ever opened a bank account or done

12 business in Washington, according to Mr. Troup.  *Id.*

13    Mr. Troup approached Mr. Meyers around November, 2010, to discuss starting a joint

14 venture company, MotionTek.  Dkt. 19 at 1.  MotionTek would develop a product that records

15 the position and movement of a person wearing the product and then wirelessly transmits that

16 data for display and distribution in events like athletic competitions.  *Id.* at 1-2.  MotionTek was

17 incorporated effective January 26, 2011.  Dkt. 16 at 2.  Mr. Troup was the corporation's sole

18 member, and caused it to be dissolved August 24, 2011.  *Id.*

19    Around January, 2011, Mr. Meyers resigned his employment and began telecommuting

20 to work for Mr. Troup and MotionTek.  Dkt. 19 at 3.  Of four employees working for Mr. Troup

21 on this project, Mr. Meyers and another employee both lived in and telecommuted from

22 Washington.  *Id.* at 2.  The other employees were based in California and Hawaii; these

23 employees telecommuted as well.  *Id.*  Mr. Troup was the only involved party based in

24

ORDER- 2

1  Wisconsin.  *Id.*  All employees relied on the internet, wireless access, and Skype to communicate

2  and hold videoconferences.  Dkt. 19 at 4.

3        Mr. Meyers and Mr. Troup met in person on five occasions; once in Mexico, once in

4  Utah, and three times in California.  Mr. Meyers was on other business while in Mexico and

5  Utah.  Dkt. 19 at 3; Dkt. 17 at 2.  Mr. Troup paid airfare for in person meetings in California.

6  Dkt. 17 at 2-3; Dkt. 19 at 2-3.

7        At the third in person meeting with Mr. Troup in California, Mr. Meyer received his

8  employment contract, reviewed it, and he signed it in Washington.  Dkt. 19 at 4.   Mr. Troup

9  contends that he emailed Mr. Meyers an offer of employment with DCT, not MotionTek, during

10  the meeting.  Dkt. 16 at 4.  Mr. Meyers received his salary and benefits from DCT.  Mr. Meyers

11  understood that this was a temporary situation until MotionTek was up and running and

12  understood that DCT had neither interest in the product nor ownership in MotionTek.  Dkt. 19 at

13  3.

14        Mr. Meyers resigned his employment to join MotionTek based on Mr. Troup's promises

15  of a ten percent ownership interest in MotionTek as reflected in all drafts of the operating

16  agreement.  Dkt. 19 at 2-3.  Mr. Meyers notes that he believes the operating agreement was still

17  in draft form under negotiation at the time of his termination.  Dkt. 19 at 4.  According to Mr.

18  Troup, the agreement was finalized but left unsigned by all parties.  Dkt. 16 at 5.

19      Mr. Meyers served as DCT Vice President of Product Operations.  Mr. Troup states that

20  in that capacity, Mr. Meyers was not required to work in Washington.  Rather, he would have

21  been required to relocate to Wisconsin had he continued past his termination in May 27, 2011.

22  Dkt. 16 at 5-6.  Mr. Meyers alleges that Mr. Troup considered his Washington location beneficial

23  as it is "near world-class outdoor sporting events in which the Product would ultimately be

24

1    deployed."   Dkt. 19 at 4.   Mr. Meyers believed that Mr. Troup wanted to utilize Mr. Meyers'

2    relevant market contacts in Washington to develop and market the product.   Dkt. 19 at 6.

3            Mr. Meyers states that he solicited and obtained business with two companies in

4    Washington.   He established a relationship between MotionTek/DCT and Contour, Inc., a

5    company that manufactures cameras.   Dkt. 19 at 5.   And, he met with Washington

6    representatives of Brezinski Motion Design (BMD), an Oregon company that provides video

7    editing and motion graphics.   *Id.*   BMD subsequently provided services to MotionTek.   *Id.*

8    According to Mr. Troup, both Contour and BMD provided services to or did business with

9    EpicSessions, another of Mr. Troup's companies; neither did business with MotionTek.   Dkt. 21

10   at 3-4.

11                        **III.    This Court Has Personal Jurisdiction.**

12           Mr. Meyers bears the burden of showing this Court has personal jurisdiction.   *Shute v.*

13   *Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585

14   (1991).   He need only make a prima facie showing of jurisdiction as this motion is being decided

15   without an evidentiary hearing.   *Id.*   Mr. Meyers' uncontroverted statements must be considered

16   true and factual conflicts must be resolved in his favor.   *Boschetto v. Hansing*, 539 F.3d 1011,

17   1015 (9th Cir. 2008).   Mr. Meyers does not argue that this Court has general jurisdiction over the

18   defendants.   Therefore, the Court considers whether it has limited jurisdiction.

19           Jurisdiction must comport with the state long arm statute and with constitutional due

20   process.   *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995).   The

21   Washington Supreme Court has held that the Washington long-arm statute is co-extensive with

22   federal due process, therefore the analyses merge.   *Shute v. Carnival Cruise Lines*, 113 Wash.2d

23   763, 771 (1989); RCW 4.28.185.   The Ninth Circuit employs a three-part test to determine

24

whether the court has limited jurisdiction.  *Roth v. Garcia Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991).

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

**A)  Defendants Purposefully Availed Themselves of This Forum and Purposefully Directed Their Activities Toward it.**

The Ninth Circuit considers contract cases under the purposeful availment standard and tort cases under the purposeful direction standard within the first prong of the limited jurisdiction test.  *Id*.  Mr. Meyers' contract claims and tort claims are considered separately below.

**1.  Defendants Purposefully Availed Themselves of the Privilege of Conducting Activities in Washington.**

Defendants argue that no relevant interactions took place in Washington.  The contract was negotiated in person in California or via the internet where Mr. Meyers could have been sitting anywhere in the world.  Mr. Meyers' job did not require him to be located in Washington and he would have had to relocate to Wisconsin had he continued with the company.  Mr. Meyers disagrees, saying his Washington location was considered beneficial as this was where the product would be developed and marketed.  Further, Mr. Meyers alleges he had already been working on the defendants behalf making business connections in Washington.

*Burger King* rejected "mechanical" tests of personal jurisdiction, favoring instead a "highly realistic" approach that "recognizes that a 'contract' is ordinarily but an intermediate

step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."  471 U.S. at 478-79 (internal quotations omitted).

The Court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when evaluating the appropriateness of specific jurisdiction over the claims arising from a contractual dispute.  *Id*. at 479.  The existence of a contract alone is insufficient to establish personal jurisdiction over non-resident parties.  *Roth*, 942 F.2d at 621 (relying on *Burger King*, 471 U.S. at 478).  Soliciting business in the forum state, however, "will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business."  *Rosenberg v. Seattle Art Museum*, 42 F.Supp.2d 1029, 1033 (W.D. WA 1999) (citing *Shute*, 897 F.2d at 1195).  Parties who "create continuing relationships and obligations" in the forum state may be subject to personal jurisdiction there.  *Burger King*, 471 U.S. at 473 (internal quotations omitted).

Mr. Meyers alleges the future consequences and effects of the operating agreement would take place in Washington.  Mr. Troup argues no part of the contract meaningfully touches or affects Washington.  Under *Roth*, a contract that is a "one-shot deal that was merely negotiated and signed by one party in the forum" is insufficient to confer even limited jurisdiction.  942 F.2d at 622.  The *Roth* court determined that the contract at issue there was not a one-shot deal. Rather, "most of the future of the contract would have centered on the forum."  *Id.* at 621.  Roth was a film maker and California resident asserting that California had personal jurisdiction over the author of a novel with whom he was negotiating a contract for film rights.  *Id.*  The court noted that while filming would take place outside of California, film editing, production, and advertising would take place within California.  *Id.*; *Cf. Rosenberg*, 42 F.Supp.2d at 1035 (noting

1  that the purchase of a painting, though it took place within a long term relationship, was in itself

2  a "one-shot deal").

3      Construing contested facts in Mr. Meyers' favor, most of the future of the operating

4  agreement, giving ownership interest in MotionTek to Mr. Meyers, would have centered on

5  Washington.  Mr. Meyers solicited business in Washington on behalf of the defendants and

6  expected to continue this as part of his work duties.  His role in the company would have

7  required that he partner with relevant businesses to market and test the product in Washington, a

8  "world-class outdoor sporting environment[]."  Dkt. 19 at 4.  Mr. Meyers' work centered in

9  Washington rather than Wisconsin during his employment and the future consequences of the

10 contract would also have been increasingly focused here.

11     The Ninth Circuit and this district have hesitated to exercise jurisdiction when

12 defendants are in the forum as a result of the plaintiff's initiative.  *Roth*, 942 F.3d at 721;

13 *Rosenberg*, 42 F.Supp.2d at 1033.  The *Roth* court highlighted Roth's efforts to initiate contact

14 with the defendants saying "it seems clear that the predominant efforts were made by [Roth], not

15 the [defendants]".  942 F.3d at 621.  Roth traveled to Havana, Barcelona, and Mexico City to

16 meet the defendants in person, placed over one hundred phone calls, and sent "numerous faxes"

17 to the defendants.  *Id.*  In contrast, the *Rosenberg* court noted that the buyers of the painting at

18 issue initiated the purchase on their own.  42 F.Supp.2d at 1034.  The art gallery owners did not

19 solicit the buyer's business; rather, the buyers happened to come to the gallery by chance. *Id.*

20     Unlike Mr. Roth, Mr. Meyers did not make "predominant efforts" reaching out and

21 pulling Mr. Troup into Washington's jurisdiction.  Rather, he was solicited by Mr. Troup.  Mr.

22 Troup approached Mr. Meyers initially and paid for airfare for Mr. Meyers to meet him on three

23

24

ORDER- 7

1   different occasions.  Mr. Meyers did not seek out Mr. Troup or a Wisconsin company.  Rather,

2   Mr. Troup actively solicited the services and employment of Mr. Meyers, a Washington resident.

3   When the Eastern District of Washington considered a case similar to Mr. Meyers', it

4   relied on the fact that the plaintiff's residence was in Washington during the parties' negotiations

5   of the substance of the employment contract at issue.  *Van Steenwyck v. Interamerican*

6   *Management Consulting Corporation*, 834 F.Supp. 336, 338 (E.D. Wash. 1993).  Mr. Van

7   Steenwyck received a letter he perceived as a contract for employment at his Washington

8   residence.  *Id.*  Later, someone else was hired for that position and Mr. Van Steenwyck sued for

9   breach of contract.  *Id.*

10   Mr. Van Steenwyck argued the court had personal jurisdiction as the defendant sent

11   pertinent communications to his home, and the employment contract was affected in

12   Washington.  *Id.* at 342.  The court agreed stating, "the defendant did not purposefully avail itself

13   of the privilege of conducting business in Washington *simply* by sending communications to

14   plaintiffs' Washington residence."  *Id.* (emphasis added).  Rather, the defendant availed itself by

15   negotiating the "substance of an employment contract with [Mr.] Van Steenwyck while he was

16   residing in Washington.  The defendant's decision to do so is significant."  *Id.*

17   Similarly, the substance of Mr. Meyers' operating agreement and ownership interest in

18   MotionTek was negotiated while he resided in Washington.  Mr. Troup's decision to have done

19   so is also "significant."

20   Mr. Meyers has sufficiently shown that these three defendants purposefully availed

21   themselves of the benefit of doing business in Washington.  In relation to the contractual claims,

22   Mr. Meyers has satisfied the first element of the Ninth Circuit's personal jurisdiction test.

23

24

ORDER- 8

**2.  Defendants Purposefully Directed their Contacts at Washington.**

Mr. Meyers also alleges misrepresentation and unjust enrichment.  To determine whether it has personal jurisdiction to hear tort claims, the Court applies the purposeful direction, "*Calder*-effects" test.  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).  To satisfy the purposeful direction test, the plaintiff must allege that the defendant "1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

The Ninth Circuit construes the intent required in an intentional act to mean "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004).  Mr. Meyers alleges that defendants intentionally misrepresented his ownership interest in the company and were unjustly enriched.  This satisfies the first prong of the test.

The second prong of the purposeful direction test, express aiming, has proven difficult to define and apply consistently.  *Attachmate Corp. v. Public Health Trust of Miami-Dade County Fla.*, 686 F.Supp.2d 1140, 1147 (W.D.Wash. Jan. 13, 2010) (citing, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 22 F.3d 1082, 1087 (9th Cir. 2000) (stating the express aiming "hardly defines itself"); *Wyatt Tech. Corp. v. Smithson*, 2005 WL 6132329, at *3 (C.D.Cal. Aug. 30, 2005) (stating application of express aiming element has been "somewhat inconsistent)).

The Ninth Circuit has held the express aiming requirement satisfied when the defendant allegedly "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 22 F.3d at 1087.  By contrast, in *Schwarzenegger*, the Ninth Circuit allowed that defendant's actions might cause harm to the plaintiff in California and allowed that the defendant might have known plaintiff lived in

California.  The Court held, however, that defendant's misuse of plaintiff's image in Ohio did not satisfy the express aiming requirement, because there was no reason to believe a Californian would see the allegedly misused image.  374 F.3d at 806-807.

In this case, Mr. Trout knew that Mr. Meyers lived in Washington, and the effects of the misrepresentation affected Washington.  Mr. Meyers allegedly acted in reliance on the misrepresentations quitting his job, collaborating with relevant companies to aid the project, and identifying locations to promote the group's project.  All of these activities were done in Washington relying on the false pretenses of partial ownership.  Similarly to *Bancroft & Masters*, defendants knew Mr. Meyer lived in Washington.  The harm caused by the tortious conduct was all located in Washington as well, unlike in *Schwarzenegger*. Thus, the second and third prongs of the purposeful direction test are met.

**B)  Mr. Meyers Has Shown His Claims Arise Out of the Defendants' Contacts with Washington.**

But for the alleged contacts between the Defendants and Washington, Mr. Meyers' claims would not have arisen.  *Bancroft*, 223 F.3d at 1088.  His claims arise out of the operating agreement specifically in regarding his ownership interest in MotionTek.  This ownership interest, he alleges, induced him to leave his former employment and negotiate an employment contract with Mr. Troup.  Mr. Meyers was a Washington resident through these negotiations.  He conducted business in Washington on behalf of a company in which he believed he had an ownership interest.  Mr. Meyers' tort claims relate to the breached agreement as well and therefore also arise out of these same contacts.

**C)  The Defendants Have Not Shown that the Exercise of Jurisdiction is Unreasonable.**

"For jurisdiction to be reasonable, it must comport with fair play and substantial justice." *Bancroft*, 223 F.3d at 1088.  As the Court has found defendants purposefully availed themselves

of the forum, jurisdiction is presumed reasonable. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Defendants bear the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Burger King*, 471 U.S. at 477). The Ninth Circuit looks to seven factors to weigh the reasonableness of exercising jurisdiction. *Bancroft*, 223 F.3d at 1088.

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.*

The defendants have not made a sufficient showing that the exercise of jurisdiction is unreasonable to overcome Mr. Meyers' showing of purposeful availment, though some of these factors weigh in the defendants' favor.

The first factor, purposeful interjection, is largely redundant as the Court found purposeful availment. Therefore, this factor cuts in favor of Mr. Meyers' position. *Roth*, 942 F.2d at 623 (stating "there is no need to analyze this first fact separately" given the first prong of the jurisdictional test).

The second factor, the burden on the defendants, tips slightly in the defendants' favor. Hauling the defendants into Washington is undoubtedly burdensome. The Court in *Roth* took note of the parties' travel habits when analyzing the burden on the defendants in that case. It highlighted Mr. Roth's proclivity to travel in comparison to the defendants who travelled less in the facts at hand in that case. Here, Mr. Troup travelled, and paid the airfare of the other employees to travel to California, for business meetings. He met Mr. Meyers originally outside of the country in Mexico and also met him in Utah. He is a well-travelled businessman. This is not to say that litigation would not burden his already complex travel schedule, all litigation does

1   that, this is to say that travelling to a forum outside of his home state is not unfamiliar to him.

2   This factor favors the defendants, nonetheless.

3   The third factor, conflict with the sovereignty of the defendants' state, leans slightly in

4   favor of the defendants' position.  There is no real conflict with Wisconsin's sovereignty here.

5   The defendants indicate Mr. Meyers' claim for punitive damages under Wisconsin law, if it is

6   found to apply, implicates Wisconsin's "strong interest" in resolving claims under that statute.

7   Dkt. 15 at 18.  Choice of law rules are up to the task of protecting "fundamental substantive

8   social policies" of another state should such an issue arise.  *Burger King*, 471 U.S. at 477.

9   Undoubtedly, however, Wisconsin has an interest in adjudicating conflicts involving its citizens

10   and entities.  This third factor weighs slightly in defendants' favor.

11   The fourth factor, the forum state's interest, decidedly favors Mr. Meyers' position.  The

12   Ninth Circuit has indicated that a forum state has a strong interest in resolving tort claims of its

13   residents, though there is no such indication in case law related to contract claims.  *Roth*, 942

14   F.2d at 624.  Washington, therefore, has a strong interest in hearing Mr. Meyers' tort claims at

15   least.  The fourth factor weighs in Mr. Meyers' favor.

16   The fifth factor, efficient judicial resolution of the controversy, is neutral or slightly

17   tipped in Mr. Meyers' favor.  Much of the relevant evidence appears to be electronic, which

18   suggests the factor is neutral.  However, as the other employees are from the West Coast

19   generally, perhaps a West Coast forum is more convenient for potential witnesses.  Mr. Troup

20   contends that all of the physical evidence is in Wisconsin, however.  This factor is essentially

21   neutral.

22

23

24

1    The sixth factor, the importance of the forum to the plaintiff, decidedly favors Mr.

2 Meyers' position.  The forum is important to Mr. Meyers.  He alleges travel would be financially

3 difficult.  It would be more convenient to litigate in the state where he resides.

4    The seventh factor, the existence of an alternative forum, favors the defendants' position.

5 Neither party disputes that Wisconsin is an available alternative forum.

6    In total, purposeful interjection, the forum state's interest, and the importance of the

7 forum to the plaintiff factors favor Mr. Meyers' position.   The burden on the defendant, the

8 sovereignty of the defendants' forum state, and the existence of an alternative forum favor the

9 defendants.  The judicial efficiency factor is neutral.  On balance, these factors do not indicate a

10 compelling reason to overcome Mr. Meyers' purposeful availment showing.

11         **IV.**  **Venue is Proper in this District.**

12    Defendants argue that under FRCP 12(b)(3), the Court should dismiss for improper

13 venue.  Defendants argue that venue is proper in the Eastern District of Wisconsin where the

14 defendants reside and produce and develop the product.  Mr. Meyers asserts that because he was

15 solicited in Washington, worked on behalf of MotionTek and DCT in Washington, and suffered

16 harm in Washington such that venue is proper here.

17    Under 28 U.S.C. § 1391, venue is proper in:

18      (1) a judicial district in which any defendant resides, if all defendants are residents
       of the State in which the district is located;

19

20      (2) a judicial district in which a substantial part of the events or omissions giving
       rise to the claim occurred, or a substantial part of property that is the subject of
       the action is situated; or

21

22      (3) if there is no district in which an action may otherwise be brought as provided
       in this section, any judicial district in which any defendant is subject to the court's
       personal jurisdiction with respect to such action.

23

24

1    The Ninth Circuit has held that in breach of contract questions, "that the spirit of §

2 1391(a) is better served in this case if venue for a claim based on breach of contract be the place

3 of intended performance rather than the place of repudiation." *Decker Coal Company v.*

4 *Commonwealth Edison Company*, 805 F.2d 834, 842 (9th Cir. 1986).  In *Decker Coal*, Decker

5 was a corporation that resided in Montana and brought breach of contract claims against an

6 Illinois corporation.  *Id.* at 837.  The Illinois corporation argued venue was proper in Illinois as it

7 resided there and witnesses and evidence were located there.  *Id.* at 842.  Therefore it argued the

8 court should dismiss or transfer the case to Illinois.  *Id.*

9    Decker argued that the contract was intended to be performed in Montana such that the

10 claim really arose there.  *Id.*  Therefore, Montana was the more appropriate venue.  *Id.*  The court

11 held venue proper in Montana noting that the "place of performance is likely to have a close

12 nexus to the underlying events."  *Id.*  In this case, Mr. Meyers has alleged that performance of

13 the breached contract was intended to take place in Washington.  Therefore, following *Decker*,

14 venue is more appropriate here, where the contract was intended to be performed.

15    Furthermore, in tort actions, the focus of an injury is "a relevant factor" in determining

16 venue.  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *Silver Valley*

17 *Partners, LLC v. De Motte*, 400 F.Supp.2d 1262, 1269 (W.D.Wash. 2005).  In *Myers*, a paralegal

18 at the defendant law firm pulled the credit reports of the plaintiffs in violation of the Fair Credit

19 Reporting Act.  *Myers*, 238 F.3d at 1071.  To determine whether venue was proper in the state

20 where plaintiffs resided, Nevada, the court noted that the plaintiffs suffered harm akin to the tort

21 of invasion of privacy, and that harm was felt in Nevada.  *Id.* at 1076.  The court concluded that

22 a "substantial part of the events giving rise to the claim" occurred in Nevada, and therefore

23 venue was proper there.  *Id.*

24

ORDER- 14

1    Similarly in this case, Mr. Meyers lives and works in Washington.  He alleges he relied

2    on misrepresentations — ten percent ownership interest in MotionTek — to leave his then

3    current employment and join MotionTek.  He relied on the misrepresentations and suffered harm

4    in Washington.  Therefore, Western Washington is a proper venue for Mr. Meyers' claims

5    against the defendants.  While venue is proper in the Eastern District of Wisconsin as defendants

6    reside there, it is also proper in this district.  Mr. Meyers satisfies the venue requirements set out

7    in 28 U.S.C. 1391 and can properly bring his claims in this Court.

8    Defendants also argue that the Court should transfer venue under 28 U.S.C. § 1404.  This

9    section allows the court to transfer the case to another district where the action could have been

10    brought based upon convenience considerations and the interests of justice.  The Court may

11    consider a number of factors including:

12    (1) the location where the relevant agreements were negotiated and executed, (2)
     the state that is most familiar with the governing law, (3) the plaintiff's choice of
13    forum, (4) the respective parties' contacts with the forum, (5) the contacts relating
     to the plaintiff's cause of action in the chosen forum, (6) the differences in the
14    costs of litigation in the two forums, (7) the availability of compulsory process to
     compel attendance of unwilling non-party witnesses, and (8) the ease of access to
15    sources of proof.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir.
     2000) (relying on *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987); *Stewart*
16    *Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))

17    The agreement here was negotiated in California and via the internet while Mr. Meyers

18    was in Washington.  Both Washington and Wisconsin have equal familiarity with the laws

19    governing contract and tort claims and which state's law applies has not yet been determined.

20    Mr. Meyers chose this forum and the defendants have sufficient contact with this state and this

21    forum to sustain exercising personal jurisdiction over them.  The differences in costs are

22    basically neutral as litigating in Washington requires Mr. Troup to travel and litigating in

23

24

1  Wisconsin requires Mr. Meyers to travel.  Compulsory process is available in either forum and

2  so are sources of proof.

3          The only factor that really cuts strongly toward Washington or Wisconsin is that Mr.

4  Meyers chose Washington.  Given that Washington is the state where the contract was to be

5  performed, that Mr. Meyers resided and suffered harm in Washington, and that he chose this

6  forum, his choice is entitled to "great weight."  *Lou*, 834 F.2d at 739.

7                                      **V.      Conclusion**

8          Accordingly, the Court **DENIES** defendants' motion to dismiss or transfer.  (Dkt. 15).

9          It is so **ORDERED**.

10         Dated this 24th day of April, 2012.

11

12

13         RONALD B. LEIGHTON
           UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24